# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHAEL S.,

    Plaintiff,

v.

MARTIN O'MALLEY,

    Defendant.

Case No. 2:24-cv-00204-NJK

**Order**

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently before the Court is Plaintiff's motion to reverse and remand. Docket No. 11. The Commissioner filed a responsive brief. Docket No. 13. No reply was filed. *See* Docket. The parties consent to resolution of this matter by the undersigned magistrate judge. Docket No. 3; *see also* Gen. Order. 2019-08.

**I.   STANDARDS**

    A.   Judicial Standard of Review

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action...brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id*.

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id*. To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the Administrative Law Judge ("ALJ") to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B.  Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence does not establish a significant limitation of an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 404.1522. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. Social Security Rulings ("SSRs") 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. SSR 16-3p. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565. If the individual has the residual functional capacity to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II. BACKGROUND

### A. Procedural History

On December 17, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits with an alleged onset date of January 17, 2017. *See, e.g.,* Administrative Record ("A.R.") 38, 380-381. Plaintiff's application was denied initially and again on reconsideration. A.R. 185, 187-194. Plaintiff filed a request for a hearing before an administrative law judge. A.R. 218-219. On November 29, 2021, Plaintiff appeared for a hearing before ALJ Barry Jenkins. *See* A.R. 77-86. Plaintiff opted to postpone the hearing to obtain an attorney representative. A.R. 83-85.

On June 17, 2022, and October 27, 2022, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Kathleen Kadlec. *See* A.R. 87-173. On December 9, 2022, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. A.R. 38-55. The Appeals Council denied Plaintiff's request for review. A.R. 1-4. On February 1, 2024, Plaintiff commenced suit seeking judicial review. Docket No. 6.

### B. The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). A.R. 39-54. At step one, the ALJ found that Plaintiff met the insured status requirement through December 31, 2022, and had not engaged in substantial gainful activity since the alleged onset date. A.R. 40. At step two, the ALJ found that Plaintiff had the following severe

impairments: rotator cuff repair of the right upper extremity with labral tear; left lower extremity meniscal tear, bursitis, and Baker's cyst; degenerative disc disease of the cervical and lumbar spine; postoperative changes of the cervical spine; and left shoulder supraspinatus tendinopathy with tendon rupture. A.R. 40-44. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. A.R. 44. The ALJ found that Plaintiff has the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] is able to stand for six hours, walk for six hours, and sit for six hours. He can push/pull as much as he can lift/carry. He can operate foot controls with the bilateral feet frequently. He can operate hand controls with the bilateral hands frequently. He is limited to occasionally reaching overhead with the bilateral upper extremities, yet is able to frequently reach in all other directions with the bilateral upper extremities. He can handle items frequently with the bilateral hands, can finger frequently with the bilateral hands, and can frequently feel with the bilateral hands. The [Plaintiff] can climb ramps and stairs occasionally, but can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can never work at unprotected heights. He can occasionally work around moving mechanical parties, as well as occasionally operate a motor vehicle. He can occasionally tolerate extreme cold, extreme heat, and vibrations.

A.R. 44-52. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a money counter as generally performed, and that such work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. A.R. 52-54. The ALJ, further found that, even if Plaintiff could not perform any of his past relevant work, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform based on his age, education, work experience, and residual functional capacity. A.R. 53. Based on all of these findings, the ALJ found Plaintiff not disabled from the alleged onset date through the date of her decision. A.R. 54 -55.

### III.   ANALYSIS

Plaintiff submits that the ALJ's determination is not supported by any medical opinion. Docket No. 11 at 11. Notably, Plaintiff does not challenge the ALJ's evaluation of the medical opinions in the record; rather, he argues that the ALJ's RFC determination did not have the support

of substantial evidence because it did not match one of the medical opinions. Docket No. 11 at 11. Plaintiff submits that, by finding all medical opinions of record unpersuasive, the ALJ's RFC assessment "represents nothing but her own lay medical opinion." *Id*. Specifically, Plaintiff submits that the ALJ's findings are not reasonable because they are "untethered to any medical opinion." *Id*. The Commissioner responds that the ALJ properly evaluated the medical opinions and prior administrative medical findings ("PAMF") and reasonably assessed Plaintiff's RFC based on all the evidence in the record. Docket No. 13 at 5.

"[R]esidual functional capacity is the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC determination considers all medically determinable impairments, including those that are not severe. *Id*. at §§ 404.1545(a), 416.945(a). The RFC assessment must consider all evidence in the record and "contain a thorough discussion of the objective medical and other evidence." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing Social Security Ruling 96-8p, 61 Fed. Reg 34474, 34478 (July 2, 1996)). "The RFC is an administrative assessment of the extent to which an individual's medically determinable impairments...may affect his or her capacity to do work-related physical and mental activities." *Id*. (quoting SSR 96-8p, 61 Fed. Reg at 34475). "[A]t the administrative law judge hearing level...the administrative law judge...is responsible for assessing [Plaintiff's] residual functional capacity." 20 C.F.R. §§ 404.1546(c), 416.946(c). The residual functional capacity determination does not need to copy the exact opinion of any particular doctor, but "the ALJ is responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended*, 807 F.3d 996, 1005-06 (9th Cir. 2015).

When evaluating medical evidence, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R § 404.1520c(a). The ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" based on certain specified factors. *Id*. The most important factors are supportability and consistency, which the ALJ must address. 20 C.F.R. § 404.1520c(b). "Supportability means the extent to which a medical source supports the medical

7

opinion by explaining the 'relevant...objective medical evidence.' Consistency means the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. §§ 404.1520c(c)(1) & (c)(2)).

### A. Medical Opinions

Plaintiff submits that the ALJ's RFC finding is not supported by substantial evidence. Docket No. 11 at 10. Defendant responds that the ALJ's RFC assessment includes "a thorough analysis of all the relevant evidence, including Plaintiff's subjective allegations, the objective medical evidence, Plaintiff's response to treatment, Plaintiff's reported activities, and the medical opinions and PAMFs in the record." Docket No. 13 at 5. Defendant further submits that the ALJ reasonably found the opinions to be not persuasive because they lacked supportability and consistency. *Id*.

Plaintiff provides no case law in support of his contention that an ALJ's determination must be tethered to a medical opinion. Instead, the regulations simply state that the RFC is based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). The regulations instruct the ALJ to consider the persuasiveness of the medical opinions based on the supportability and consistency of the opinions. 20 C.F.R. § 404.1545c(b-c). The ALJ does not need to "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As explained below, the Court finds no error in the ALJ's RFC determination.

#### a. Dr. Amarjit Singh

The ALJ summarized the findings of Dr. Singh and concluded that Dr. Singh's opinion was not persuasive. A.R. 50. Specifically, the ALJ found that Dr. Singh's opinion limiting Plaintiff to a reduced range of sedentary work was not supported by the results of his own examination. A.R. 50. For example, Dr. Singh's examination showed that Plaintiff displayed "5/5 strength in the bilateral upper and lower extremities, normal grip strength, intact sensation, normal reflexes, an ability to get up and down from the examination table without difficulty, an ability to tandem walk and walk on his toes without difficulty, an ability to squat and rise with ease, a normal

gait without the use of an assistive device, and a normal range of motion other than a slightly decreased range of motion regarding bilateral shoulder abduction." A.R. 50.; *see also* A.R. 749-754.

Second, the ALJ found that Dr. Singh's findings were internally inconsistent. A.R. 50. For example, Dr. Singh noted that, while Plaintiff can frequently lift and carry 10 pounds, he can occasionally carry less than 10 pounds. A.R. 50; *see also* A.R. 751. This opinion was also inconsistent with other examinations that show no reduction in Plaintiff's extremity strength. A.R. 50; *see also* A.R. 962-963, 1056-1059. The ALJ also noted that Dr. Singh's examination occurred prior to Plaintiff's surgery on his left upper extremity that was largely successful. A.R. 50; *see also* A.R. 1051-1054. Further, the ALJ noted that, in 2021, Plaintiff reported that after his left shoulder surgery, he was able to reduce his pain medication due to decreased pain and was looking for work. A.R. 50; *see also* A.R. 811. The ALJ further noted that even the last record in the file indicated Plaintiff was awaiting physical therapy for his neck and back complaints rather than shoulder/hand complaints, which were the focus of Plaintiff's symptoms at Dr. Singh's consultative examination. A.R. 50; *see also* A.R. 1056. The Court finds that the ALJ's discounting of Dr. Singh's opinion is supported by substantial evidence.

      b. <u>Kelly Hawkins Physical Therapy</u>

The ALJ summarized the findings of the treatment providers at Kelly Hawkins Physical Therapy and concluded that their opinion was not persuasive. A.R. 50. Specifically, the ALJ found that the evaluation from Kelly Hawkins Physical Therapy that Plaintiff can perform work at a medium exertional level is inconsistent with their finding of a significant decrease in Plaintiff's safe lifting capabilities when lifting above the waist level, which indicates that Plaintiff has stability issues when lifting objects that are consistent with medium exertional demands. A.R. 50; *see* A.R. 671-674.

Additionally, the ALJ found that the treatment providers' opinion was inconsistent with later records, which showed Plaintiff developed additional musculoskeletal symptoms and impairments that could not have been noted or addressed in the treatment providers' opinion. A.R. 50. For example, the opinion only focuses on Plaintiff's decreased mobility of his shoulders, but

9

later medical records show impairments involving Plaintiff's left knee and spine. A.R. 673; *see also* A.R. 950-951, 962. The Court finds that the ALJ's discounting of the opinion from treatment providers at Kelly Hawkins Physical Therapy is supported by substantial evidence.

          c.    Dr. Samuel Pak and Dr. Gurpreet Chahal

The ALJ summarized the findings of state agency medical consultants Dr. Pak and Dr. Chahal and concluded that their opinions were not persuasive. A.R. 50. Specifically, the ALJ found that the opinion that Plaintiff can lift and/or carry up to 50 pounds occasionally is inconsistent with a previous finding of a significant decrease in Plaintiff's safe lifting capabilities when lifting objects that makes this finding inconsistent with medium exertional demands. A.R. 50. For example, Dr. Pak and Dr. Chahal both concluded that Plaintiff can occasionally lift and carry 50 pounds occasionally and 25 pounds frequently. A.R. 181, 192. However, that is inconsistent with the report from Kelly Hawkins Physical Therapy, which Dr. Chahal took into account for his evaluation, A.R. 189, that found Plaintiff had a significant decrease in safe lifting capabilities when performed above the waist level (i.e. lifting safely only up to 35 pounds to shoulder level and only 25 pounds overhead). A.R. 673.

Additionally, the ALJ found that Dr. Pak's and Dr. Chahal's opinions were inconsistent with later medical records, which show that Plaintiff developed additional symptoms and impairments that could not have been noted or addressed in their opinions. A.R. 50. The Court finds that the ALJ's discounting of opinions from Dr. Pal and Dr. Chahal is supported by substantial evidence.

B.    Radiological Imagining

Plaintiff submits that "the ALJ's lay opinion fails to explain how radiological imaging and examinations support [Plaintiff's] allegations of knee pain, back pain and bicep/arm pain." Docket No. 11 at 12. Plaintiff submits that the ALJ is "not qualified to interpret the raw medical data." *Id*. at 13. Plaintiff argues that "the ALJ could have ordered a consultative examination…could have adduced testimony from a medical expert at the hearing." *Id.* Plaintiff submits that "Plaintiff identified that he cannot lift greater than 10 pounds…Plaintiff explained to Dr. Wu that he…continued to have pain…Plaintiff complained that he cannot lift left arm where has had

10

surgery." *Id*. at 13. Plaintiff then submits that this alleged "inconsistency identified along with the fact that no medical doctor reviewed the raw medical data established the ALJ's failure to not have ordered clarification from [Plaintiff's] medical doctors...ALJ's decision to simply assess a limitation to light work without the support of any substantial evidence was error." *Id*.

The Court finds that the ALJ did not substitute her lay opinion in place of medical evidence in the record. Instead, the ALJ considered the evidence provided by Plaintiff's medical providers in determining Plaintiff's RFC. This was not "raw data," but instead information that Plaintiff's medical providers interpreted and recorded in Plaintiff's medical records and the ALJ considered. For example, Plaintiff asserts that "no medical doctor actually reviewed the MRI of the left knee on January 5, 2022," Docket No. 11 at 12, yet the January 20, 2022 report from Nevada Orthopedic & Spine Center analyzes the MRI. A.R. 962. ALJs do not need to seek the opinion of a medical expert every time they review new medical evidence and make an RFC determination. *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (determining RFC "is the responsibility of the ALJ, not the claimant's physician") (citing 20 C.F.R. § 404.1545). There is a presumption that ALJs are capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Here, the ALJ acknowledged what the MRI showed, and then interpreted the data to determine the Plaintiff's RFC. Docket No. 48. The Court therefore finds that the ALJ's RFC determination is supported by substantial evidence.

### IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to reverse and remand. Docket No. 11. The decision below is **AFFIRMED**. The Clerk's Office is **INSTRUCTED** to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

Dated: September 27, 2024

Nancy J. Koppe
United States Magistrate Judge

11